Laramoee, Judge,
delivered the opinion of the court:
Plaintiffs’ claim is founded upon frequent flights at unreasonably low levels of large numbers of jet B-52 bombers and KC-135 jet tankers owned and operated by the defendant in conjunction with its use of Fairchild Air Force Base located in Spokane County, Washington. Plaintiffs claim that said flights were so numerous, low and noisy, that they *420 have amounted to a substantial tailing of their property and have severely depreciated the market value of said property, rendering it totally valueless as an owner-occupied farm.
On the other hand, the defendant contends that the taking occurred earlier and that as a consequence thereof plaintiffs’ cause of action accrued in 1951 and is barred by the statute of limitations, 28 U.S.C. § 2501.
Defendant further contends that in the event the court finds the cause of action is not barred by the statute of limitations, supra, plaintiffs are entitled to just compensation in a lesser amount than that found by the trial commissioner.
At the outset, it should be noted that plaintiffs concede that to the extent their property was depreciated by flights of B-36 aircraft, it is now too late for them to be compensated for that loss. Therefore, the loss for which plaintiffs here seek compensation is that of the complete destruction of all residual value of the improvements on their farm which existed in March 1957.
Plaintiffs’ position seems to us to be not only the correct one but consistent with the holding of the Supreme Court in United States v. Causby, 328 U.S. 256, and various cases decided by this court. Highland Park, Inc. v. United States, 142 Ct. Cl. 269; Matson, et al. v. United States, 145 Ct. Cl. 225; Carl H. Klein v. United States, 152 Ct. Cl. 221, cert. denied 366 U.S. 936.
The case of United States v. Causby, supra, teaches us that flights of aircraft over private land which are so low and frequent as to be a direct and immediate interference with the use and enjoyment of the land constitute a taking of a flight easement and an imposition of a servitude upon the land.
Here there can be no question, and the facts show, that there were low flights of defendant’s aircraft over the land of plaintiffs. There also can be no question, and the facts show, that the B-52 jet aircraft were substantially noisier than the B-36 aircraft and that the use of B-52s made sleeping in plaintiffs’ home impossible. As a result the home became uninhabitable, and the improvements on the farm, insofar as they related to the use of the property as an owner-occupied farm, were rendered substantially worthless.
*421 True, the flights of B-36 aircraft diminished the value of plaintiffs’ property, but the noise from the B-36s, while annoying and inconvenient, did not render their home uninhabitable or untenable, and it was possible to live with this annoyance. Proof of this is the fact that plaintiffs did continue to live in the home on the premises until the advent of the B-52 flights. Therefore, even if it could be said that a taking occurred in November 1951 when the B-36 bombers commenced flying over plaintiffs’ land, it certainly was at most only a partial taking and not such a taking as occurred when the B-52 flights commenced. Furthermore, as stated previously, it is conceded by plaintiffs that it is now too late for them to be compensated for the earlier loss, and that loss is not a subject of this law suit.
This case is premised on the theory that in 1957 when the flights of B-52s and KC-135 jet aircraft commenced, the plaintiffs’ premises lost such residual value for residential purposes as they may have had considering the flights of B-36 aircraft.[1]
In respect to the above, the facts show that in March 1957, before the commencement of flights by B-52 and KC-135 jet aircraft, the highest and best use of plaintiffs’ premises was for agricultural purposes, as it had been before, with some residual value of the improvements thereon for residential purposes in connection with the operation of an owner-occupied farm. After the commencement of B-52 flights over plaintiffs’ property, on or about March 26, 1957, plaintiffs’ use and enjoyment of their property was so adversely affected as to render substantially worthless the improvements on the property since plaintiffs’ home was no longer inhabitable, and the other improvements were essentially related to the use of the property as an owner-occupied or residential farm.
Furthermore, it is clearly shown by the evidence that, while the property suffered some diminution in residential *422 value because of the B-36 flights, the highest and best use of the property was for agricultural purposes and its value for such purposes remained the same. The evidence further shows that after the flights of B-52s commenced in March 1957 the use of the home for residential purposes became worthless. The other buildings, especially the bam, could be used only for temporary machinery and crop storage. It, therefore, was in March 1957 that a taking occurred and at that time plaintiffs’ cause of action for the taking of residual value of the property accrued. Plaintiffs’ petition was filed February 28,1959, and the cause of action is not barred by the statute of limitations, supra.
Plaintiffs contend that the fair market value of their property was, after the commencement of the B-52 jet aircraft flights in March 1957, reduced by the sum of $9,000, said reduction reflecting the value of the improvements on the property. Defendant contends that the effect on the fair market value of plaintiffs’ property by the commencement of such flights on or about March 26, 1957, was to cause a reduction therein in the amount of only $3,700 and that its liability, if any, should be restricted to such amount.
However, the commissioner has found, and we adopt the finding, that:
* * * Taking into consideration the entire record, including the opinions of the real estate appraisers offered by the parties, the value of comparable properties, especially wheat farm operations, the reduction in value already caused prior to March 26,1957 by the B-36 flights, the further reduction in value caused (for which plaintiffs have already been paid) by the taking of the clearance easement referred to in finding 12, and such residual value as the improvements still would have incident to a nonresidential agricultural operation, as de-cribed in finding 19, it is concluded that the effect on the fair market value of plaintiffs’ property by the flights of the B-52 jet bombers was to reduce such value by the sum of $6,000 [finding 20].
Therefore, we conclude that plaintiffs are entitled to recover, and judgment will be entered against the defendant in the amount of $6,000, together with interest at the rate *423 of four percent from March 26, 1957, the date of taking, as a part of just compensation.
Defendant contends that the award of just compensation should be conditioned upon the execution and delivery to the defendant of a deed from the plaintiffs precisely describing and conveying the interests taken by the United States. This action has been taken by this court on other occasions,[2] but in the instant case the plaintiffs are no longer the owners of the real estate. Plaintiffs’ grantee is not a party to this suit and consequently no order could be made which would directly bind said grantee. However, plaintiffs’ grantee must certainly have been aware of the flights and resultant taking by defendant and no doubt took title subject to any interest of the United States. For this reason we hold that defendant is vested with a perpetual easement of flight for the aircraft in use at the time of taking, March 26, 1957.
It is so ordered.
Need, Justice {Bet.) sitting by designation,; Dureee, Judge, and Jones, Chief Judge, concur.

 Under defendant’s theory, If the Government is granted an easement permitting an officer or agent of the Government to walk over a person’s land, and later the Goverment marches an army over said land thereby causing damage far greater, no cause of action could be maintained because the action accrued when the walking easement was granted. It seems clear that such accrual would be manifestly unjust and unfair and consequently could not be the law. Cf. Klein v. United States, supra.

 Ferrell v. United States, 49 Ct. Cl. 222; Dick v. United States, 144 Ct. Cl. 424; 169 F. Supp. 491; Bacon v. United States, this day decided post, p. 441, 295 F. 2d 936.